UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

FATIMA DE VARGAS,                                        :

                                        Plaintiff,       :

            - against -                                  :

MICHAEL J. ASTRUE,                                       :
COMMISSIONER OF SOCIAL SECURITY,                         :

                                        Defendant.       :

-------------------------------------------------------- X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★   JUL 2 7 2012   ★

BROOKLYN OFFICE

**MEMORANDUM**
**DECISION AND ORDER**

11 Civ. 3838 (BMC)

**COGAN**, District Judge.

Pursuant to the Social Security Act, 42 U.S.C. § 405(g), plaintiff, appearing *pro se*, brings this action seeking review of the Commissioner of Social Security's denial of her application for disability insurance benefits and Supplemental Security Income. Before the Court is the Commissioner's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). Although plaintiff was served with notice of defendant's motion, plaintiff has not filed opposition. For the reasons set forth below, the Commissioner's motion is granted.

## BACKGROUND

Plaintiff filed an application seeking disability insurance under Title II, and social security insurance under Title XVI of the Social Security Act. She alleged disability due to schizoaffective disorder, depression, "nerve condition," and anxiety. The Social Security Administration denied her application, reasoning that plaintiff's medical conditions did not prevent her from performing past relevant work. Plaintiff requested a hearing, and appeared before an Administrative Law Judge. The ALJ denied plaintiff's claim, and the Appeals Council affirmed.



## I.    Non-Medical Evidence

Born in the Dominican Republic in 1974, plaintiff became a permanent resident of the United States in 2004.  She has a sixth grade education.  Prior to filing her disability application, plaintiff had worked in a factory as a "tagger" from September 2004 to October 2005, and a "washer" from October 2005 through December 2005.  She then left the factory to become a home health aide, working for two months before being fired in February 2006.  She resumed factory work that month as a packer of fruits and vegetables until she stopped working in December 2006.  She was eight months pregnant with her second child at the time.  Plaintiff claims to have been self-employed from 2007 to 2008, but has also indicated that she stopped working altogether in 2006.

Plaintiff lives with her brother and two children.  She has testified that her symptoms have adversely impacted her ability to perform household chores, purchase groceries, care for herself, and independently travel outside her home.  She claims her medical condition has caused her to feel forgetful, distracted, and confused, particularly in stressful situations.  However, her ability to take care of herself and her family has varied with the intensity of her symptoms.  In 2007, plaintiff reported feeding her adolescent son baby food because she was unable to cook for him.  Yet in a function report prepared in 2009, plaintiff noted that she cooked food such as rice, beans, meats, and salads for her brother and children.  In 2009, she was able to complete household tasks with help and shop for food with the assistance of her oldest child.

Although plaintiff attends church three times per week, she reports little other social activity.  She was able to visit her mother on a month-long trip to the Dominican Republic in May 2009.

2

## II.    Medical Evidence

In 2006, plaintiff visited internist Dr. Fazil Hussain complaining of anxiety, dyspepsia, and depression.  Plaintiff explained that prior to her claimed onset of disability, she had suffered from an anxiety disorder, depression, and dyspepsia (indigestion) since the 1990s.  Each condition had been periodically ameliorated through medication.  Plaintiff was not receiving mental health treatment at the time of her visit to Dr. Hussain, and was six months pregnant.  She indicated that she had trouble walking, climbing stairs, and performing household chores.  Dr. Hussain conducted a psychiatric evaluation, finding that plaintiff had been incompletely treated for mental illness.  He diagnosed chronic recurrent major depression with psychotic features as well as panic disorder with agoraphobia.  Dr. Hussain prescribed three months of psychotherapy and medication.

On July 23, 2007, plaintiff sought treatment from Rebecca Fishman, L.C.S.W., for insomnia and auditory hallucinations.  Prior to this visit, plaintiff had heard voices instructing her to commit suicide or otherwise hurt herself.  Plaintiff reported two attempted suicides, the most recent occurring six months before this visit.  At the time of her appointment with Ms. Fishman, plaintiff was not receiving medical treatment or counseling.  Plaintiff stated that her mental infirmities prevented her from maintaining gainful employment for longer than one month, and cited her recurring unemployment as a significant stressor in her life.  Because Ms. Fishman believed that plaintiff might cause herself harm, she had plaintiff taken to the emergency room at St. John's Episcopal Hospital.  Ms. Fishman also called the police to check the safety of plaintiff's older son and alerted the New York City Administration for Children's Services.

At St. John's Episcopal Hospital, Dr. Azucena C. Rey conducted a psychiatric consultation.  Dr. Rey diagnosed major recurrent depression, moderately severe, with psychotic

3

features and suicidal ideology. Plaintiff stayed at the hospital overnight for observation, and after being observed in a stable condition, was transferred the next day to the Mercy Medical Center for further evaluation.

At the Mercy Medical Center, plaintiff was seen by Dr. Antoine Ewald. Plaintiff continued to display symptoms of depression and psychosis, including crying spells and auditory hallucinations which instructed her to commit suicide. Yet plaintiff indicated that she was not suicidal because she did not intend to follow these instructions. Dr. Ewald diagnosed major depression with psychotic feature. He measured plaintiff's global assessment of functioning ("GAF") at 39 to 40. A score in the range of 31 to 40 indicates that the patient has some impairment in communication or major impairment in other areas including work or school, family relations, judgment, thinking, or mood; a lower score signifies greater impairment. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION TEXT REVISION 34 (American Psychiatric Association ed., 1994). Doctors at the Mercy Medical Center adjusted plaintiff's medications, after which plaintiff felt better. Although Dr. Ewald did not feel that plaintiff was "100% ready," plaintiff was discharged on August 2, 2007 to continue treatment as an outpatient. At the time of her discharge, plaintiff had a GAF of 60, reflecting moderate symptoms and moderate difficulty with occupational functioning. Id.

On September 20, 2007, Dr. Vikhta Gurevich, a psychiatrist, assessed plaintiff's functional capacity by completing a Physician's Wellness Plan Report. This report was designed to assist the New York City Human Resources Administration in determining plaintiff's ability to participate in "work-related activities." Dr. Gurevich indicated that plaintiff suffered from schizoaffective disorder with depression, and was being treated regularly with individual therapy and monthly medication oversight. At the time, she was prescribed Seroquel, Risperdal, and

4

Wellbutrin: three anti-psychotic and antidepressant medications. Plaintiff reported feeling better as a result of her treatment. Dr. Gurevich noted that plaintiff would require ongoing monitoring to prevent relapse and decomposition, and estimated that plaintiff would be unable to work for at least twelve months.

Still suffering from symptoms of mental illness, plaintiff was referred to the New Horizon Counseling Center by a Family Court social worker. There, on July 14, 2008, Dr. Marie Lippman examined plaintiff and observed that her past treatments have had poor outcomes. She recorded plaintiff's GAF score at 50 to 55 and also indicated that plaintiff's mood, thought process, and memory were normal. A GAF score between 50 and 60 reflects moderate symptoms. Dr. Lippman described plaintiff's affect as "appropriate" and diagnosed plaintiff with depressive disorder. The next day, plaintiff met with Ms. Rivka McGovern, L.C.S.W., who recommended continued psychopharmacotherapy as needed, weekly counseling sessions, and provision of crisis services as needed.

Plaintiff claimed December 31, 2008 as the date of onset for her disability. On January 20, 2010, she saw Michael Alexander, Ph.D., an Independent Medical Examiner, for a consultative psychiatric examination. Plaintiff travelled to the examination on public transportation, accompanied by her neighbor's daughter. She claimed that she had not worked since 2006 because she was "too nervous." At the time, plaintiff was taking Trazodone and Lexapro to treat depression. Dr. Alexander found that she was able to groom herself, shop, and tend to household chores. While communicating through a translator, Dr. Alexander discovered that plaintiff was able to perform simple tasks, could maintain concentration, and could keep a regular schedule. Dr. Alexander and plaintiff agreed that medication controlled plaintiff's

symptoms of depression. Dr. Alexander's ultimate diagnosis was depressive disorder with anxious features.

Dr. P. Kudler, a State agency medical examiner, reviewed Dr. Alexander's report, completing a psychiatric review form on February 1, 2010. After reading Dr. Alexander's medical notes, Dr. Kudler concluded that plaintiff did not satisfy Section 12.04 of the Listing of Impairments. Dr. Kudler found that plaintiff suffered from mild restrictions on daily behavior, and concurred with Dr. Alexander's assessment of plaintiff's functional and social capacities. Dr. Kudler wrote that plaintiff was hospitalized for post-partum depression in 2008 and suffers from dysthymia, a chronic form of depression with symptoms less severe than major depression.

## III.    ALJ Hearing and Determination

At the hearing before the ALJ, plaintiff appeared *pro se* and testified through a translator. Plaintiff stated: "When I don't have medication, I get nausea, vomiting. My baby is three years old, so if I take the medication, I can feed him, take care of him."

Dr. Leslie Fine, an Independent Medical Examiner, restated Dr. Alexander's medical conclusions, adding that plaintiff was taking Lexapro, Ambien, and Trazodone: antidepressants which "sufficiently controlled" plaintiff's depressive disorder. In reviewing plaintiff's medical records, Dr. Fine testified that in her professional opinion, plaintiff's symptoms were "not sufficient enough to interfere with daily functions," and that she did not meet the 12.04 disability criteria.

The ALJ found that plaintiff's depressive disorder constituted a severe impairment under 20 CFR §§ 404.1520(c) and 416.920(c). However, the ALJ concluded that plaintiff was not disabled because she could still perform certain types of work, notably the same types of work she performed prior to filing her application. This conclusion was based on an assessment of the

6

severity of plaintiff's medical condition compared to her prior work experience, age, training, and education.

## DISCUSSION

### I.      Standard of Review

42 U.S.C. §§ 423(a) and 1382 provide that benefits are available to anyone deemed "disabled" under the Social Security statute.  The statute defines "disabled" as "unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The "impairment" must stem from "anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic technique."  Id. at § 1382c(a)(3)(D).  The claimant holds the burden of proving disability, but once she has established a prima facie case, the Secretary must show that there is work in the national economy that the claimant could perform.  Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984).

The Commissioner uses a five-step procedure to evaluate a claimant's application for benefits.  In step one, the Commissioner inquires whether a claimant was performing substantial gainful activity at the time he or she filed for benefits.  20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner inquires whether the claimant has any "severe impairments" precluding claimant's ability to work.  20 C.F.R. §§ 404.1520(c), 416.920(c).  In step three, the Commissioner inquires whether the disability meets the criteria for impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Step four requires comparing claimant's residual functional capacity to the demands of his or her work prior to filing for benefits.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Lastly, in step five, the

Commissioner determines whether there is any work that the plaintiff can perform. 20 C.F.R. §§ 404.1520(f), 416.920(f).

In assessing conflicting medical evidence, the ALJ must give a treating physician's opinion "controlling weight," provided that it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(d)(2). A treating physician is defined by the statute as a medical professional who can "provide a detailed longitudinal picture" of a plaintiff's condition.

A Court will remand an ALJ decision when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." Manago v. Barnhart, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A Court will also remand when the administrative record has not been fully developed. See Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004).

## II.   Decision

The ALJ properly weighted the medical evidence before him, and his finding that plaintiff was not disabled is supported by substantial evidence in the record. Although at the apex of plaintiff's illness, in 2007, plaintiff registered a GAF score suggestive of moderate symptoms indicating moderate difficulty in social, occupational, or school functioning, following treatment, plaintiff's improved score reflected only mild symptoms. Moreover, while appropriately medicated, plaintiff had reported being able to cook full meals for her family, complete household tasks with some assistance, use public transportation, and travel independently outside of the home.

8

Although Dr. Gurevich opined that plaintiff would not be able to work for twelve months after he saw the patient in September of 2007, she was subsequently examined ten months later by Dr. Lippman who evaluated plaintiff's GAF at 50-55, indicating significant improvement. Furthermore, when plaintiff was examined by Dr. Alexander in 2010, Dr. Alexander noted that plaintiff's psychiatric problems were found to be "sufficiently controlled, and do not appear significant enough to interfere with the claimant's ability to function on a daily basis." In fact, plaintiff agreed with Dr. Alexander's assessment, telling him that her symptoms were controlled by her medication. This opinion was later corroborated by Dr. Fine, the Independent Medical Examiner.

The record does not suggest that plaintiff had a treating physician under the meaning of the statute; the record does not indicate that plaintiff saw any of her doctors more than once. Here, the ALJ accepted Dr. Alexander's assessment of plaintiff's functional capacity, which was consistent with the administrative record suggesting an improvement and stabilization in plaintiff's symptoms over time. The ALJ found that plaintiff had an "emotional problem" that should not prevent her from returning to her prior work as a factory worker, given that vocation's physical and mental stresses.

When a plaintiff appears without counsel, this Court will afford the plaintiff "special solicitude," adopting the plaintiff's "strongest claims." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). In light of plaintiff's *pro se* status, I have closely examined the ALJ's decision for procedural inaccuracies, especially for the failure to consider necessary records or explain the standard being applied. There are no such inaccuracies.

9

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is granted, and the complaint

is dismissed.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       July 27, 2012

10